Argued and submitted October 17, reversed December 22, 1980,
reconsideration denied February 2,
petition for review allowed March 17, 1981
See later issue Oregon Reports

# MOONEY,
## *Respondent,*
### *v.*
# JOHNSON CATTLE CO., INC., et al,
## *Appellants.*

### (No. 15,467-L, CA 16999)

621 P2d 93

J. Burdette Pratt, Nyssa, argued the cause for appellants. With him on the briefs were Stunz, Fonda & Pratt, Nyssa, and Gigray, Miller, Downen & Weston, Caldwell, Idaho.

Max S. Taggart, II, Ontario, filed the brief for respondent. With him on the brief was Taggart & Taggart, Ontario.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J. PRO TEMPORE.*

---

*Appointed to Supreme Court December 1, 1980.

## CAMPBELL, J. PRO TEMPORE

The defendants have appealed from a judgment entered against them on a jury verdict in the amount of $6,500 for mental anguish only. The action was brought by the plaintiff, seeking damages for the defendants' alleged interference with the plaintiff's contract to purchase cattle from a third person. We reverse.

On appeal the plaintiff is entitled to the benefit of all evidence favorable to him. *Hansen v. Bussman,* 274 Or 757, 549 P2d 1265 (1976). We adopt our statement of the facts from the plaintiff's brief.

The defendant Clarence Johnson is the owner and primary employe of the defendant Johnson Cattle Co., Inc. The plaintiff and defendants are cattle buyers who compete for the purchase of the same cattle in the same area. On August 18, 1978, the plaintiff, by telephone, contracted to buy from Marie Young of the Jamieson area of Malheur County 550 head of steers weighing about 750 pounds per head. The agreed price per head was 56 cents per pound, except the price for the 70 largest steers was 54 cents per pound. By prearrangement, the plaintiff immediately resold the Young steers to Norman Waitt, another cattle buyer, for the same price. Waitt agreed to pay the plaintiff a commission of 35 cents per cwt.

On August 21, 1980, the defendants contacted Young and offered to purchase the same 550 head of steers for 58 cents per pound. The steers were sold and delivered to defendants.

In the meantime, Waitt had resold the steers and demanded that the plaintiff cover their contract within 30 days. The plaintiff, after a considerable struggle, was able to buy other steers at approximately 57 cents per pound to fulfill his contract with Waitt.

The plaintiff's complaint alleged that as "a direct and proximate result" of the defendants' interference with the contract the "plaintiff's reputation as a reliable cattle buyer * * * was damaged and plaintiff endured mental suffering, worry and anxiety all to the plaintiff's general

damage in the sum of $10,000."[1] The plaintiff also sought punitive damages.

The trial court submitted a special verdict to the jury. The verdict awarded the plaintiff the sum of $6,500 damages for "mental anguish." There was no award for loss of reputation or punitive damages.

The defendants have assigned as error the trial court's denial of their motion for judgment notwithstanding the verdict on the grounds "that there was no evidence * * * to support an award of damages for mental anguish and anxiety."[2]

As a general rule, damages are recoverable for mental suffering in an action on the tort of interference with a contract.

"The relief granted is of the broad type available in intentional tort actions and includes recompense for mental suffering, damage to reputation, and punitive damages. [Footnote omitted.] * * *" *Wampler v. Palmerton,* 250 Or 65, 73, 439 P2d 601 (1968).

Although the statement quoted above from the *Wampler* case is dictum, Section 774A of Restatement (Second) of Torts (1977) sets out a similar rule:

"(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

"* * * * *

"(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

"* * * * * *"

Prosser discusses the measure of damages in this type of case:

"* * * Where substantial loss has occurred, one line of cases tends to adopt the contract measure of damages,

---

[1] The plaintiff also sued Marie Young in a separate action for the breach of the contract to sell the steers. At the time of the trial of this case the Young case was still pending.

[2] The defendants have also assigned as error the trial court's failure to grant their motion for an involuntary nonsuit. Because of the result that we reach it is not necessary to consider this additional assignment of error.

limiting recovery to those damages which were within the contemplation of the parties when the original contract was made. Another, apparently somewhat more uncertain of its ground, has applied a tort measure, but has limited the damages to those which are sufficiently 'proximate,' with some analogy to the rules as to negligent torts. A third, perhaps the most numerous, has treated the tort as an intentional one, and has allowed recovery for unforeseen expenses, as well as for mental suffering, damage to reputation, and punitive damages, by analogy to the cases of intentional injury to person or property. In the light of the intent and the lack of justification necessary to the tort, this seems the most consistent result." (Footnotes omitted.) W. Prosser, Law of Torts, ch 25, § 130, at 948-49 (4th ed 1971).

*See also* 45 Am Jur 2d 331 (1969).

■　　We are of the opinion that the general rule which allows for the recovery of damages for mental anguish in an action on the tort of the interference with a contract is limited in Oregon by *Melton v. Allen,* 282 Or 731, 736, 580 P2d 1019 (1978):

> "It is true that this court has departed from the rigid rule of no redress for damages for mental disturbance without accompanying physical injury or physical consequences, as stated in *Adams v. Brosius,* 69 Or 513, 139 P 729 (1914), and *Rostad v. Portland Ry. Etc. Co.,* 101 Or 569, 581, 201 P 184 (1921). But in each instance in which we have allowed redress for mental disturbance without accompanying physical injury, it has been a case involving intentional acts of a flagrant character under most unusual facts and circumstances which added to the weight of the plaintiff's claim, and each was clearly a serious invasion of the plaintiff's right and not feigned. See Prosser, Law of Torts 56-59, § 12 (4th ed 1971). The cases in which we have so departed have been those of outrageous conduct, invasion of the right of privacy, or some special circumstances of considerable magnitude." (Footnotes omitted.)

The *Melton* case, 282 Or at 736-37, sets out in a footnote the following cases as examples of recovery being allowed for mental disturbance without accompanying physical injury: *Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438 (1941) (invasion of privacy); *Hovis v. City of*

*Burns,* 243 Or 607, 415 P2d 29 (1966) (wrongful disinterment); *Tollefson v. Price,* 247 Or 398, 430 P2d 990 (1967) (invasion of privacy); *Rockhill v. Pollard,* 259 Or 54, 485 P2d 28 (1971) (outrageous conduct); *Macca v. Gen. Telephone Co. of N. W.,* 262 Or 414, 495 P2d 1193 (1972) (nuisance); *Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974) (conversion); *McEvoy v. Helickson,* 277 Or 781, 562 P2d 540 (1977) (malpractice); *Truman v. Central Billing Bureau,* 279 Or 443, 568 P2d 1382 (1977) (outrageous conduct).

■    There is nothing in the record to suggest that the plaintiff suffered a physical injury which accompanied the defendants' interference with the contract to buy the steers or that the plaintiff's mental anguish resulted in physical consequences.[3] The plaintiff testified that Waitt called him every other day or so and that he (the plaintiff) felt desperate as he only had 30 days to supply the steers to fulfill the contract. The plaintiff further testified that he was in an impossible situation and that it made him "sweat a little." The plaintiff's wife testified, "Well, my husband was really upset" and "Dick (the plaintiff) was much upset because he was under obligation to fulfill this contract." We find, under the *Melton* case, that the defendants' acts in the interference of the plaintiff's contract to buy the steers from Young were not of a "flagrant character under most unusual facts and circumstances."

The trial court should have allowed the defendants' motion for judgment notwithstanding the verdict.

Reversed.

---

[3] The plaintiff argues that this case should be controlled by *Graf v. Don Rasmussen Co.,* 39 Or App 311, 592 P2d 250 *rev den* (1979), wherein this court in effect held that recovery for emotional distress, where there has been no physical injury, is limited to two types of cases: (1) where the defendant's tortious act was the direct and proximate cause of the plaintiff's emotional disturbance, *Edwards v. Talent Irrigation District,* 280 Or 307, 570 P2d 1169 (1977), and (2) the tort of infliction of emotional distress or outrageous conduct. *Rockhill v. Pollard,* 259 Or 54, 485 P2d 28 (1971). Plaintiff claims that here the defendants' tort of interference with the contract was the direct and proximate cause of the plaintiff's mental anguish. We have already held that under the *Melton* case the plaintiff is required to prove not only that the tort was the direct and proximate cause of his mental anguish, but also must show either some physical injury or consequences or acts of a flagrant character under most unusual facts and circumstances.